UNITED STATES BANKRUPTCY COURT
DISTRICT OF NORTH DAKOTA

In re:                                                                               Bankruptcy No. 06-30429
                                                                                     Chapter 7
Dustin Wieser,

          Debtor.
_____/

Acuity,

          Plaintiff,

          v.                                                                Adversary No. 06-7050

Dustin Wieser,

          Defendant.
_____/

**MEMORANDUM AND ORDER**

By Complaint filed October 12, 2006, Plaintiff Acuity initiated this adversary proceeding seeking a determination that an outstanding debt owed by Debtor/Defendant Dustin Wieser to Acuity in the total amount of $111,047.00 is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). Wieser was convicted of being an accomplice to criminal mischief in connection with vandalism against property of Acuity's insured, Mark Sand & Gravel. By Answer filed November 9, 2006, Wieser denies the allegation and seeks dismissal of the adversary proceeding. The parties agreed to submit a joint stipulation of uncontested facts and briefs in support of their respective positions in lieu of trial. The following constitutes the Court's findings of fact and conclusions of law.

I. FINDINGS OF FACT

In the early morning of December 27, 2004, an incident occurred at the premises owned by Mark Sand & Gravel in Richland County, North Dakota. After driving around in Wieser's vehicle

and drinking, Wieser, Corey Volesky, Brandon Schweitzer and Tyson Jaukkuri pulled into an old campground near Mark Sand & Gravel to relieve themselves. According to Wieser, Volesky ran over to Mark Sand & Gravel, and, once he was finished relieving himself, Wieser walked over to see what Volesky was doing. Volesky had entered a payloader and started it. Wieser entered another payloader and started it. Wieser did not know how to operate the payloader and was getting out of it (while leaving it running) when he saw headlights from the payloader Volesky was operating approaching him. Volesky then rammed the payloader he was operating into the payloader Wieser was exiting. Once Wieser recovered from the collision, he jumped out of the payloader he was in and ran over to Volesky's payloader, jumped onto the platform and said something to the effect of, "What the hell are you doing? We should get outta here." Volesky then rammed the payloader into a tree, backed it up, and hit a light pole, which fell toward Wieser's car. Wieser jumped off the payloader, ran to his car, and began to leave. Schweitzer and Jaukkuri were in Wieser's car. As Wieser was starting to drive away, Volesky jumped out of the payloader, leaving it running, and got into Wieser's car. They left Mark Sand & Gravel at approximately 1:00 a.m. They were there 15 to 20 minutes.

Several pieces of Mark Sand & Gravel equipment sustained damage: 1997 Komatsu ($12,547); 1994 Caterpillar ($35,000); 1987 Komatsu ($20,000); 1984 Caterpillar ($50,000); and 1984 Caterpillar Payloader ($7,500). Acuity insured Mark Sand & Gravel and subsequently received a judgment against Wieser in the amount of $111,047 plus costs, disbursements and interest. The judgment reflects the amount of the damage minus $11,000 salvage value.

Following the incident, law enforcement investigated the vandalism. Wieser was interviewed by investigator Josh Beto three times in March 2005. During the first interview, Wieser

2

denied any involvement in the vandalism. During subsequent interviews, Wieser admitted he was present during the vandalism, but denied operating any of the equipment. Wieser provided a signed statement to Beto stating:

> Me Corey Brandon and Tyson were driving around the lake when we pulled in to the camping grounds by the gravel pit. We all got out to go to the bathroom. Corey took off towards the machinery and started one of them up. He then came over to my car and I jumped on and asked him what he thought he was doing. He then hit a tree and a telephone pole. When He took off the other way and I jump [sic] off and went to my car. He was over there for about twenty minutes. We all got back in my car a [sic] left. I did not operate any of the equipment.

Volesky pled guilty to criminal mischief in conjunction with the vandalism. Wieser pled guilty to the following charge:

> That on December 27, 2004, in Richland County, North Dakota, the above-named Defendant [Dustin William Wieser] committed the offense of:
>
> ACCOMPLICE TO CRIMINAL MISCHIEF
>
> in violation of Sections 12.1-03-01 & 12.1-21-05(1)(b) of the North Dakota Century Code, By then and there with intent that an offense be committed, he commands, induces, procures, or aids the other to commit it, or, having a statutory duty to prevent its commission, he fails to make proper effort to do so, to-wit: The Defendant, on or about December 27, 2004, in the early morning hours at Gutzmer Sand & Gravel, aka Mark Sand and Gravel Dakota, Co., in Richland County, North Dakota, with the intent that an offense be committed, he commanded, induced, procured, or aided the other person in committing it. The Defendant accompanied Corey Volesky, a co-defendant, while Volesky started up and took a payloader from Gutzmer Sand & Gravel, aka Mark Sand and Gravel Dakota, Co. And ran it into several other pieces of heavy duty equipment, a telephone pole, and several trees causing physical damage to the property, well in excess of ten Thousand Dollars ($10,000.00).

A criminal judgment was entered against Wieser on March 7, 2006.

Wieser filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on August 31, 2006. On December 28, 2006, a state court entered a civil default judgment in Acuity's favor against Wieser in the amount of $111,047 plus costs, disbursements and interest.

3

II.  CONCLUSIONS OF LAW

The statutory exceptions to discharge in bankruptcy are narrowly construed to effectuate the fresh start policy of the Bankruptcy Code.  Owens v. Miller (In re Miller), 276 F.3d 424, 429 (8th Cir. 2002).  Accordingly, a creditor opposing discharge of a debt must prove the debt falls within an exception to discharge.  Werner v. Hofmann, 5 F.3d 1170, 1172 (8th Cir. 1993).  The standard of proof for exceptions to discharge under 11 U.S.C. § 523(a) is the preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 286 (1991).

The Bankruptcy Code provides that an individual debtor in a Chapter 7 case is not discharged from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  In this context, the term willful means deliberate or intentional.  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998); Hobson Mould Works, Inc. v. Madsen (In re Madsen), 195 F.3d 988, 989 (8th Cir. 1999).  The injury, and not merely the act leading to the injury, must be deliberate or intentional.  Geiger, 523 U.S. at 61- 62.  Malice requires conduct which is targeted at the creditor, at least in the sense that the conduct is certain or almost certain to cause financial harm.  In re Madsen, 195 F.3d at 989.  Malice requires conduct more culpable than that which is in reckless disregard of the creditor's economic interests and expectancies.  Ehrman v. Feist (In re Feist), 225 B.R. 450, 454 (Bankr. D.N.D. 1998).  A debtor acts with malice by intending or fully expecting to harm the economic interests of the creditor.  Id.  The debtor's knowledge that he or she is violating the creditor's legal rights is insufficient to establish malice absent additional aggravating circumstances.  Johnson v. Logue (In re Logue), 294 B.R. 59, 63 (B.A.P. 8th Cir. 2003).

    A.    Collateral Estoppel

Acuity argues that Wieser's criminal conviction and the state court civil judgment are conclusive of the dischargeability issue in this case and that Wieser is collaterally estopped from denying the debt is nondischargeable.

Collateral estoppel applies in bankruptcy court to bar the relitigation of factual or legal issues that were determined in a prior state court action. Grogan, 498 U.S. at 284 n.11 (1991); Johnson v. Miera (In re Miera), 926 F.2d 741, 743 (8th Cir. 1991); see 28 U.S.C. § 1738 (providing that state court judicial proceedings "shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law for usage of such State, Territory, or Possession from which they are taken"). The use of collateral estoppel in dischargeability proceedings under section 523(a), however, is subject to the caveat that it be applied with great care because bankruptcy courts are vested with the exclusive jurisdiction to determine the nondischargeability of debts. Grogan, 498 U.S. at 284. Indeed, the policy considerations underlying the bankruptcy discharge weigh strongly in favor of nonpreclusion. Community Nat'l Bank v. Slominski (In re Slominski), 229 B.R. 432, 437 (Bankr. D.N.D. 1999).

The substantive law of the forum state is used when applying the doctrine of collateral estoppel. Fischer v. Scarborough (In re Scarborough), 171 F.3d 638, 641 (8th Cir. 1999); Osborne v. Stage (In re Stage), 321 B.R. 486, (B.A.P. 8th Cir. 2005). In North Dakota, the following elements must be satisfied to establish the preclusive effect of a prior judgment on the basis of collateral estoppel:

> (1) the issue decided in the prior adjudication must be identical to the one for which preclusion is sought; (2) the prior adjudication must have resulted in a final judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the prior adjudication; and (4) the party

5

>against whom collateral estoppel is asserted must have been given a fair opportunity to be heard on the issue in the prior adjudication.

Estate of Nelson v. Nelson (In re Nelson), 255 B.R. 314, 317 (Bankr. D.N.D. 2000) (citing Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1475 (8th Cir. 1994).

### 1. Wieser's criminal conviction

Acuity argues that Wieser's criminal conviction establishes his conduct was willful and malicious as a matter of collateral estoppel. Wieser argues that the issues decided by the criminal conviction are not identical to the elements of section 523(a)(6), and collateral estoppel is therefore inapplicable.

Wieser pled guilty to accomplice to criminal mischief in violation of N.D.C.C. §§ 12.1-03-01 and 12.1-21-05(1)(b). Section 12.1-03-01, the accomplice statute, provides in relevant part:

> 1. A person may be convicted of an offense based upon the conduct of another person when:
>    a. Acting with the kind of culpability required for the offense, he causes the other to engage in such conduct;
>    b. With intent that an offense be committed, he commands, induces, procures, or aids the other to commit it, or, having a statutory duty to prevent its commission, he fails to make proper effort to do so; or
>    c. He is a coconspirator and his association with the offense meets the requirements of either of the other subdivisions of this subsection.

Under N.D.C.C. § 12.1-21-05(1)(b), a person is guilty of criminal mischief if that person "[w]illfully damages tangible property of another." Acuity asserts that because Wieser's guilty plea was to criminal charges that included the words "with intent that an offense be committed" (N.D.C.C. § 12.1-03-01) and "willfully" (N.D.C.C. § 12.1-21-05(1)(b)), he is collaterally estopped from claiming his actions were not willful. Wieser asserts that section 12.1-03-01 is phrased in the alternative and is therefore satisfied by either the culpability required for the offense *or* an intent that an offense be committed. In other words, he suggests that a person can be convicted as an accomplice to criminal

6

mischief under North Dakota law without acting willfully because the only culpability requirement for accomplice to criminal mischief is that a person command, induce, procure or aid another to commit an offense with the intent that criminal mischief be committed. Unfortunately for Wieser, the North Dakota Supreme Court disagrees, stating in State v. Baumgartner, 2001 ND 140, ¶ 10, 637 N.W.2d 14, that "one cannot be an accomplice without having the requisite criminal intent for the underlying offense."

Based on Baumgartner, Wieser's guilty plea established that he acted willfully as defined by state law. North Dakota defines "willfulness" as conduct that was engaged in intentionally, knowingly, or recklessly. N.D.C.C. § 12.1-02-02(1)(e). Under section 523(a)(6), however, willful means deliberate or intentional. Geiger, 523 U.S. at 61. Both the Eighth Circuit and the United States Supreme Court have rejected the notion that recklessness satisfies willfulness under section 523(a)(6). Johnson v. Fors (In re Fors), 259 B.R. 131, 137 (B.A.P. 8th Cir. 2001). Because Wieser's conduct could have been reckless to satisfy North Dakota's definition of willful, the issue of willfulness as decided by the guilty plea is not identical to the issue of willfulness under section 523(a)(6).

As for maliciousness, nowhere in the criminal statutes, the charges against Wieser, or the criminal judgment is there any mention of a malicious injury by Wieser. In sum, the issues decided by Wieser's criminal conviction are not identical to issues surrounding a willful and malicious injury under section 523(a)(6), and collateral estoppel is inapplicable.

      2.     The civil judgment

Acuity also argues that its civil judgment against Wieser establishes that his conduct was willful and malicious as a matter of collateral estoppel.

7

Acuity brought a civil action against Wieser and Volesky alleging they were jointly and severally liable for the vandalism under N.D.C.C. § 32-03-09.2. Wieser subsequently filed for bankruptcy. After obtaining relief from the automatic stay, Acuity obtained a default judgment against Wieser.

Section 32-03-09.2, N.D.C.C., provides:

> Any person convicted of criminal mischief shall be responsible for the actual damages to real and personal property and such damages may be recovered in a civil action in a court of competent jurisdiction. . . . Any judgment rendered pursuant to this section shall not be discharged in bankruptcy and shall not be subject to the statutes of limitation provided in chapter 28-01, nor shall judgment be canceled pursuant to section 28-20-35.

Acuity argues that the portion of section 32-03-09.2 that provides that any judgment rendered pursuant to it shall not be discharged in bankruptcy is a recognition by the North Dakota legislature that the elements of criminal mischief meet the definitions of "willful and malicious injury" under section 523(a)(6). Acuity also argues that by failing to answer the state court complaint, Wieser acknowledged that the damages are not dishchargeable in bankruptcy.

Article I, section 8 of the United States Constitution gives Congress the power to establish uniform laws on the subject of bankruptcy throughout the United States. In view of this grant of authority to Congress, it has been settled from an early date that to the extent that state laws on the subject of bankruptcies conflict with the laws of Congress enacted under its constitutional authority, the state laws are suspended. Stellwagen v. Clum, 245 U.S. 605, 613 (1918). The determination of dischargeability under section 523(a)(6) is within the exclusive jurisdiction of the bankruptcy court notwithstanding state law or a debtor's acknowledgment. See Grogan, 498 U.S. 279 at 284 n.10. If the North Dakota legislature indeed wants the elements of criminal mischief to meet the

8

definitions of "willful and malicious injury" under section 523(a)(6), it may amend the criminal mischief statute accordingly.

Acuity's civil judgment is also for trespass and conversion. With regard to conversion, the complaint alleged that "Defendants wrongfully detained, damaged, destroyed and/or exercised domination or control over the personal property of Mark Sand & Gravel, resulting in an outstanding loss to ACUITY of $111,047.00." The civil judgment therefore establishes that Wieser acted wrongfully through conversion, but it does not establish that he acted willfully or maliciously. With regard to trespass, the civil complaint alleged that Wieser "intentionally entered the property of Mark Sand & Gravel, without its consent." The fact that Wieser intentionally entered the property of another without the consent of the landowner is insufficient to show that the injury to the property was deliberate or intentional or that the conduct was targeted at Acuity. The judgment on the trespass claim does not establish that Wieser acted willfully or maliciously under section 523(a)(6).

The issues decided by the civil judgment against Wieser are not identical to the issues surrounding a willful and malicious injury under section 523(a)(6), and collateral estoppel is again inapplicable.

B.   Willful and Malicious Injury under Section 523(A)(6)

Acuity next argues that the facts of the case as claimed by Wieser establish the debt is nondischargeable under section 523(a)(6). With regard to willfulness, there are no facts that support a finding that Wieser intended to injure the equipment. He started a payloader, but did not otherwise operate it, and there is no suggestion that Wieser knew Volesky was going to damage the equipment. Wieser did not have a statutory duty to prevent the commission of the offense, but he did try to stop Volesky from causing additional damage. The Court is similarly unconvinced that Wieser acted

9

with the requisite malice, i.e., that he intended or fully expected to harm the economic interests of Acuity. There simply are no facts from which to find Wieser's conduct malicious. Because Acuity has not met its burden of proving by a preponderance of the evidence that the injury was willful or malicious, Acuity's claim under 523(a)(6) fails.

Based on the foregoing, Plaintiff Acuity did not prove a basis for nondischargeability under 11 U.S.C. § 523(a)(6), and the debt owed to Acuity is in all things DISCHARGED.

**SO ORDERED.**

**JUDGMENT MAY BE ENTERED ACCORDINGLY.**

Dated this April 4, 2007.

**WILLIAM A. HILL, JUDGE
U.S. BANKRUPTCY COURT**